# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUTURE MEDIA ARCHITECTS, INC., | ) |
| | ) |
| | )   **ECF CASE** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   **Case No.: 08-cv-02801(LAK)** |
| | ) |
| DEUTSCHE LUFTHANSA AG, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**OPPOSITION TO DEUTSCHE LUFTHANSA AG'S MOTION TO DISMISS
PURSUANT TO RULE 12(B)1 FOR LACK OF SUBJECT MATTER JURISDICTION**

KENYON & KENYON LLP
James E. Rosini (JR 7791)
Michelle Mancino Marsh (MM 1494)
Michael Kelly (MK 6776)
One Broadway
New York, New York 10004
(212) 425-7200

Attorneys for Plaintiff
Future Media Architects, Inc.

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND ...........................................................................................3

ARGUMENT.........................................................................................................................6

    I.    Lufthansa's Own Threats, Allegations, and Arguments Support Plaintiff's
Entitlement to Broad Declaratory Relief...............................................................6

        A.    Plaintiff's Claim Satisfies the Standard For Declaratory Relief .....................7

        B.    Plaintiff Also Has a Reasonable Apprehension of a Lawsuit Based on
Lufthansa's Rights To Its LUFTHANSA Mark and Trade Name...........................8

    II.    Lufthansa's Fraud, Which It Does Not Deny, Cannot Be Ignored and Plaintiff's
Claim for Cancellation Should Not Be Dismissed ............................................9

CONCLUSION .....................................................................................................................12

TABLE OF AUTHORITIES

**Cases**

*BNSF Ry. Co. v. Box*, 470 F. Supp. 2d 855, 864  (C.D. Ill. 2007) .................................................. 7

*Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002 (N.D. Ill. 2007) .................................................. 7

*MedImmune, Inc. v. Genetech, Inc.*, 127 S.Ct. 764 (2007) ........................................................ 7, 8

*Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205 (TTAB 2003) ........................................ 12

*W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 146 USPQ 313 (TTAB 1965), aff'd, 377 F.2d 1001, 153 USPQ 749 (CCPA 1967) ......................................................................................... 10

**Statutes**

15 U.S.C. § 1064 ........................................................................................................................ 11

15 U.S.C. § 1114(2)(d)(v) .................................................................................................... 6, 8, 10

15 U.S.C. § 1119 ........................................................................................................................ 10

Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) ........................................ 2, 9

Lanham Act, 15 U.S.C. §1125(a) ............................................................................................. 2, 9

Plaintiff, Future Media Architects Inc. ("FMA"), by its attorneys, submits this Memorandum of Law in Opposition to Defendant Deutsche Lufthansa AG's ("Lufthansa" or "Defendant") motion to dismiss (the "Motion") FMA's claim for declaratory relief, in part, and its claim for cancellation of Defendant's LUFTHANSA trademark registration, Registration Number 1,871,600 (the "Registration").  As explained in more detail below, FMA has sufficiently pled a claim for declaratory relief, and separately, a claim for cancellation of the Registration , and therefore, Lufthansa's motion should be denied.

## INTRODUCTION

This is a quintessential case of reverse domain name hijacking, where Lufthansa has used the Internet Corporation for Assigned Names and Numbers' ("ICANN") policy to bring an action known as a UDRP (Uniform Domain-Name Dispute-Resolution Policy) proceeding to wrest away Plaintiff's private property, the domain name <lh.com> (the "Domain Name"). Neither the UDRP nor the Anti-Cybersquatting Consumer Protection Act ("ACPA") allows a party, even one claiming to own trademark rights, to take a domain name which rightfully belongs to another.  In the course of the UDRP proceeding, Lufthansa openly used its alleged rights to certain trademarks to support its position.  Now, when faced with having to defend its actions and its alleged trademarks, Lufthansa attempts to uncouple its aggressive action from its prior assertions—something that is not possible, as the documents speak for themselves.

While Lufthansa undoubtedly regrets not registering the Domain Name itself,[1] this Court should not allow Lufthansa to use the ACPA as a private "eminent domain" tool because it feels it is entitled to the Domain Name <lh.com>, and that its planned use of the Domain Name is

---

[1]  Given that Lufthansa claims its trademark rights date back long prior to the invention of the internet, its delay in attempting to acquire the domain name until now casts doubt on many of its arguments. To that end, Defendant registered its <lufthansa.com> domain name on January 10, 1996 but has never bothered to try to protect the letters LH with a U.S. trademark registration or a domain name registration.  Yet, now all of a sudden, it argues, <lh.com> should belong to Lufthansa.

somehow superior to the use made by Plaintiff.  Even if such use is superior in the mind of

Lufthansa's officers, this is not the question before the Court on this Motion.  The question is

whether Lufthansa should be able to use its rights in its LUFTHANSA mark and trade name as a

sword against Plaintiff, while at the same time avoiding having to address specific allegations

that it fraudulently obtained and maintained its U.S. trademark registration for LUFTHANSA for

which it claims is the very basis for the LH mark.  Tellingly, Lufthansa has never bothered to

apply for a federal trademark registration for the letters LH in the United States.

       The Motion is primarily based on Lufthansa's contention that it did not assert its

LUFTHANSA mark against Plaintiff, and therefore, the Court lacks subject matter jurisdiction

over any claims involving the LUFTHANSA mark.  Nevertheless, the LUFTHANSA mark is

inextricably tied to the claims at issue.  In Lufthansa's UDRP Complaint against Plaintiff it:  (1)

stated that its alleged LH mark was derived from its corporate name LUFT HANSA or

LUFTHANSA, (2) that <lh.com> is likely to be confused with <lufthansa.com>; and (3) alleged

that Plaintiff violated the Lanham Act.  *See* UDRP Complaint, attached as Exhibit 1 to

Lufthansa's Memorandum in Support of Its Motion at ¶¶ 13, 26, 29, 35 and 36 (hereinafter, the

"UDRP Complaint").  Even prior to filing its UDRP Complaint, Lufthansa sent Plaintiff a letter

accusing Plaintiff of conduct far beyond a simple domain name dispute, including allegations of

unfair competition, intentional trademark infringement, trademark dilution and false designation

of origin.  UDRP Complaint, Ex. B.  Then again, after filing of this lawsuit, Lufthansa stated its

intention of asserting an unfair competition claim under the Lanham Act, 15 U.S.C. §1125(a), as

well as a claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d).  *See*

Declaration of Michael Kelly ("Kelly Decl."), submitted concurrently herewith, Ex. 1.

Yet, after making the LUFTHANSA mark and trade name an issue in its UDRP

Complaint, Lufthansa now wishes to repudiate those assertions altogether because they have

become part of Plaintiff's affirmative claims before this Court.  The information revealing the

fraud that is the subject of Plaintiff's claims came from Lufthansa's own exhibits to its UDRP

Complaint.  It is no surprise that Lufthansa seeks to disregard the evidence it submitted during

the UDRP proceeding that supports Plaintiff's claims—namely, that Lufthansa is not the same

company, nor is it legally related to, the company that was originally known as LUFTHANSA

between 1926-1945, nor is it legally related to that company.  Lufthansa's statements in its

UDRP Complaint, however, are not to be used at Lufthansa's convenience and it must now

accept the record it created.  Accordingly, and as explained in more detail below, all of

Plaintiff's claims are properly before this Court, and indeed, are based upon Lufthansa's own

actions, and the jurisdiction specifically provided for in the Lanham Act.

## RELEVANT BACKGROUND

Over a year prior to filing its UDRP Complaint, Lufthansa tacitly recognized and

admitted Plaintiff's rightful ownership of the Domain Name when it attempted to purchase the

Domain Name.  In an email of December 5, 2007, a representative of Lufthansa contacted

Plaintiff and stated, "I write you on behalf of my client, Lufthansa German Airlines and

understand through our intelligence that Future Media Architects Inc. is the owner of

www.lh.com.  Lufthansa is highly engaged on the web and interested in acquiring the above url

from you.  If someone could provide me with further information to open up this dialogue, I'd

appreciate it."  *See* Plaintiff's Response to Lufthansa's UDRP Complaint (the "UDRP

Response") at Ex. 5, which is attached to the Kelly Decl. as Ex. 2.

As Plaintiff is not in the business of selling domain names, and has in fact never sold a single domain name, it has not attempted to sell the Domain Name to Lufthansa. Indeed, all emails to Plaintiff (including those from Lufthansa) are automatically replied to with the following:

> Dear Sir/ Madam,
>
> To individuals and entities interested in purchasing a domain name from FMA, we regret to advise you that pursuant to the Company's Policy and Strategic Planning, all domain names owned by Future Media Architects, Inc. are not for sale at this time. We do not anticipate this policy changing in the near future.
>
> Regards,
>
> _____
> Thunayan Khalid AL-Ghanim
> Founder/CEO FMA
> Future Media Architects, Inc.
> http://www.fma.com

UDRP Response, Ex. 2.

Unhappy with being spurned, on March 4, 2008, Lufthansa filed its UDRP Complaint. As a result of this filing, Plaintiff lost control of its Domain Name. Plaintiff filed this action, in part, under 15 U.S.C. § 1114(2)(d)(v), which gives the Court jurisdiction over domain name disputes arising from UDRP proceedings.

While preparing and filing its response to Lufthansa's UDRP Complaint, Plaintiff noted certain inconsistencies between statements in Lufthansa's UDRP Complaint and the supporting evidence it attached as exhibits. Most notably, Lufthansa stated that its alleged rights to the LH designation are derived from Lufthansa's corporate name LUFT HANSA from 1926 (and later LUFTHANSA as one word) and the International Airline Traffic Association's ("IATA") assigning to Lufthansa the designator code "LH" in 1945. UDRP Complaint ¶¶ 13, 14. Lufthansa's own evidence shows that it cannot have derived its rights from these occurrences because the entity that historically existed as LUFTHANSA *is not the Lufthansa appearing in*

*this case*.  Follow Germany's defeat in the Second World War in 1945, all service by the company then called "Lufthansa" ceased.  *See* Ex. E to the UDRP Complaint.  Lufthansa, as it exists today, was created in **1953** and did not even start flying internationally until **1955**— importantly, and according to Lufthansa, the "new" LUFTHANSA of 1953, "is not the legal successor of the LUFTHANSA founded in 1926 and which existed during and before World War II."  *Id.*

> It should also be noted this bifurcated past is corroborated by Lufthansa's own website:

> > All flights are discontinued in 1945 and Lufthansa goes into receivership and is finally wound up and struck from the Berlin commercial register in 1965.

> > The Federal Transport Minister sets up a working committee in 1951 to prepare for the resumption of air traffic in postwar Germany. . . .  **A new company to run air services and named "Aktiengesellschaft für Luftverkehrsbedarf" (Luftag) is founded in Cologne on January 6, 1953.**  The company changes its name to the more traditional "Deutsche Lufthansa Aktiengesellschaft" in 1954, and resumes scheduled flights on April 1, 1955.

Lufthansa – Chronicle, http://konzern.lufthansa.com/en/html/ueber_uns/geschichte/chronik/index.html (emphasis added).

Lufthansa has made sworn statements to the United States Patent and Trademark Office ("PTO") that its date of first use in U.S. commerce is 1929—some 26 years prior to its apparent actual first use in the United States of 1955.  This is no small discrepancy.

This false statement, which is glossed over in footnote 3 of Luftansa's Motion, <u>but not denied</u>, raises significant issues in this case, including *inter alia*, unclean hands and Lufthansa's own bad faith in the prosecution of one its trademarks, all of which is significant in a matter based in equity.  Lufthansa now asks the Court to ignore any issues related to its LUFTHANSA

mark because it did not intend to assert that mark against Plaintiff or put its mark in jeopardy. Lufthansa no doubt wishes to escape from any downside risk in this case and eliminate its incentive to settle. However, Lufthansa cannot ignore that its asserted rights to the alleged LH mark are derived from the LUFTHANSA mark, that it claimed that <lh.com> is confusingly similar to <lufthansa.com>, and that a party standing before a court in equity, as Lufthansa is here, cannot wash its hands of fraud.

## ARGUMENT

I.    **Lufthansa's Own Threats, Allegations, and Arguments Support Plaintiff's Entitlement to Broad Declaratory Relief**

It appears that Lufthansa does not seek to dismiss Plaintiff's entire claim for declaratory relief, which Plaintiff is entitled to under 15 U.S.C. § 1114(2)(d)(v). Rather, Lufthansa takes issue with Plaintiff's claim for declaratory relief against its LUFTHANSA mark, because, it argues, its LUFTHANSA mark is not part of this dispute. Lufthansa further argues that there is "no independent basis for federal jurisdiction" and "specifically no declaratory judgment jurisdiction" to involve its LUFTHANSA mark. Motion, at 5-6. However, this is not a case where the Lufthansa's alleged LH mark stands independent from the LUFTHANSA mark.

Lufthansa has already stated that its alleged LH mark is derived from LUFTHANSA and that LH is an "internationally known and famous trademark and service mark" that has been associated with LUFTHANSA since "at least as early as 1945." UDRP Complaint, ¶ 12. Lufthansa previously argued that the alleged LH mark is essentially synonymous with its LUFTHANSA mark and trade name in the minds of its consumers. Moreover, Lufthansa argued in its UDRP Complaint that Plaintiff's use of <lh.com> is likely to be confused with <lufthansa.com> and likely to cause dilution. UDRP Complaint, ¶¶ 26, 29 and 36. Therefore,

the alleged LH mark and the LUFTHANSA mark are inextricably intertwined and the validity of

the later is properly before this Court.

    A.    <u>Plaintiff's Claim Satisfies the Standard For Declaratory Relief</u>

There is more than adequate legal basis for the Court to grant the declaratory relief

requested in Plaintiff's Complaint.  While Lufthansa cites to *MedImmune, Inc. v. Genetech, Inc.*,

127 S.Ct. 764 (2007), in support of its position that Plaintiff's request for declaratory relief is

overly broad, it seems to ignore that the holding of *MedImmune* is widely recognized as

broadening the scope of declaratory judgment jurisdiction.  As set forth in *Geisha, LLC v.*

*Tuccillo*, 525 F. Supp. 2d 1002 (N.D. Ill. 2007) cited by Lufthansa, it is clear that after the

*MedImmune* decision, a declaratory judgment plaintiff does not need to establish a reasonable

apprehension of a lawsuit in order to establish that there is an actual controversy between the

parties.  *Geisha*, 525 F. Supp. 2d at 1112; *see also BNSF Ry. Co. v. Box*, 470 F. Supp. 2d 855,

864  (C.D. Ill. 2007) ("a plaintiff need not expose himself or herself to liability or engage in

conduct violative of the statute in question before the plaintiff could seek a declaratory

judgment").

Under *MedImmune*, to state a sufficient claim for declaratory relief, it must be shown that

(1) there is a sufficient controversy (2) between parties having adverse legal interests (3) of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *MedImmune*,

127 S.Ct. at 771.  All three factors for declaratory relief exist in this case.

First, there is no dispute that a controversy exists over the alleged LH mark and the

Domain Name.  As explained above, during the UDRP proceeding, Lufthansa also made an issue

of its LUFTHANSA mark and trade name.  Accordingly, this controversy also includes the

LUFTHANSA mark and trade name.  Moreover, should Lufthansa lose rights in and to the

7

LUFTHANSA mark and trade name, such a loss would necessarily weaken its claim to any rights derived therefrom, including the alleged LH mark.

Second, it is also clear that the parties have adverse legal interests. The parties have already taken part in an adversarial proceeding before ICANN, and the parties are now before this Court.

Third, there is a sufficient immediacy to warrant the issuance of a declaratory judgment. Lufthansa ignores an important fact, which distinguishes the present situation from the cases cited by Lufthansa in support of its Motion:  Plaintiff is entitled to declaratory relief in this case under 15 U.S.C. § 1114(2)(d)(v).  All issues raised during the underlying ICANN proceeding— including the LUFTHANSA mark and trade name and any fraud in procuring a its registration as a U.S. Trademark—are legitimately before this Court.

      B.      <u>Plaintiff Also Has a Reasonable Apprehension of a Lawsuit Based on Lufthansa's Rights To Its LUFTHANSA Mark and Trade Name</u>

While *MedImmune* now allows a plaintiff to seek declaratory relief without showing a reasonable apprehension of a lawsuit, here Plaintiff does have such a reasonable apprehension, and therefore, seeks broad declaratory relief to protect it from future action based on alleged misconduct that Lufthansa has already accused Plaintiff of committing.  For example, Lufthansa sent Plaintiff a protest letter accusing it of unfair competition, intentional trademark infringement, trademark dilution and false designation of origin.  UDRP Complaint, Ex. B. These accusations go far beyond a mere domain name issue, and Lufthansa's attempt to characterize this action as merely over the Domain Name is disingenuous, at best.  Lufthansa also states that the Domain Name "is likely to cause confusion, mistake, and misleadingly divert Internet users trying to locate legitimate information about [Lufthansa], its business, its aviation products, airline flights and related services" and Lufthansa's website located at

<www.lufthansa.com>. UDRP Complaint, ¶ 20. By its allegation that <lh.com> is likely to be confused with <lufthansa.com>, Lufthansa has stated that it believes Plaintiff's use of LH is confusingly similar to LUFTHANSA, which in other words, is trademark infringement.

In case there was any doubt regarding Lufthansa's intent to pursue claims beyond those related to the Domain Name against Plaintiff, Lufthansa's counsel sent Plaintiff's counsel a letter stating that "when a response to [Plaintiff's] complaint is due, [Lufthansa] will assert an unfair competition claim under the Lanham Act, 15 U.S.C. §1125(a), as well as a claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d). Through this ACPA claim, [Lufthansa] intends to challenge the propriety of [Plaintiff's] business model." See Kelly Decl., Ex. 1.

Accordingly, Plaintiff believes that it is in a real and immediate threat of Lufthansa pursuing trademark infringement, trademark dilution, unfair competition, and false designation of origin claims against it based upon its rights in and to the LUFTHANSA mark and trade name. Therefore, the declaratory relief requested in the Complaint is proper, and declaratory judgment jurisdiction exists for this Court.

**II.** **Lufthansa's Fraud, Which It Does Not Deny, Cannot Be Ignored and Plaintiff's Claim for Cancellation Should Not Be Dismissed**

Even if the Court finds that Plaintiff is not entitled to seek broad declaratory relief, including a declaratory judgment that it has not violated any rights owned by Lufthansa in and to its LUFTHANSA mark and trade name, Plaintiff is still entitled to seek cancellation of the Registration.

Lufthansa's argument that Plaintiff cannot seek cancellation in a U.S. District Court unless it has exhausted all administrative remedies is mistaken. This is not a case where Plaintiff has brought a sole claim for cancellation, and Plaintiff does have an independent basis for

jurisdiction in this Court.  At a minimum, Plaintiff is entitled to a declaratory judgment in this

case under 15 U.S.C. § 1114(2)(d)(v), and Plaintiff has also raised independent claims against

Lufthansa that are not subject to this Motion to Dismiss, namely Claim II, also for declaratory

relief, Claim III, for tortious interference and Claim IV, for fraud.  Therefore, Lufthansa's

argument and cited authority on page five of its brief to support its position that "[a] court can

hear cancellation claims only if joined with some other independent grounds for declaratory

judgment" is inapposite because Plaintiff has other independent grounds for a declaratory

judgment—and other grounds for jurisdiction—beyond its claim for cancellation.

As Lufthansa concedes, 15 U.S.C. § 1119 allows this Court to "rectify the register with

respect to the registrations of any party to the action."  To the extent that 15 U.S.C. § 1119

requires the involvement of a registered mark, as suggested by Lufthansa, it involves the

registered mark LUFTHANSA and the alleged LH mark, for which Lufthansa claims to own

multiple foreign registrations.  As explained above, both of these marks have been brought into

issue by virtue of Lufthansa's own arguments before ICANN and Plaintiff's affirmative claims

raised in this case.

Lufthansa's procedural arguments cannot cover up a very simple undisputed fact:  the

Registration was obtained after making a material false statement before the PTO.  Lufthansa

now asks the Court to ignore that Lufthansa swore that it was using its LUFTHANSA mark in

U.S. commerce approximately 26 years prior to its corporate formation, and it is safe to assume,

its first flight to the United States.

It is clear that the public interest supports removing fraudulently obtained registrations

from the federal trademark register.  *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 146 USPQ

313 (TTAB 1965), aff'd, 377 F.2d 1001, 153 USPQ 749 (CCPA 1967) ("[I]t is within the public

interest to have registrations which are void *ab initio* stricken from the register and that this interest or concern cannot be waived by the inaction of any single person or concern no matter how long the delay persists."). To this end, 15 U.S.C. § 1064 allows for the cancellation at any time of a registration that was fraudulently obtained. This section of the Lanham Act is also clear that cancellation may be sought by any person who believes that he is or will be damaged by the registration of a mark on the principal register. Certainly, Plaintiff meets that standard as it would be remarkable for Lufthansa to defend this case, in light of its assertions in the UDRP proceeding, without asserting that its alleged rights to LH are derived from its LUFTHANSA mark and trade name.

This clear standard set forth under the Lanham Act provides a very low threshold for parties to seek cancellation, and is contrary to Lufthansa's contention that Plaintiff must be able to point to some "activity in which it is engaged and which would create and issue of infringement of the LUFTHANSA mark." Motion at 7. Even assuming, *arguendo*, that Lufthansa is correct, Lufthansa has accused Plaintiff of unfair competition, intentional trademark infringement, trademark dilution and false designation of origin, and alleged that Plaintiff's use of <lh.com> is likely to be confused with <lufthansa.com>. UDRP Complaint, ¶ 20 and Ex. B. Lufthansa has already satisfied the burden it seeks to impose on Plaintiff with its own allegations and accusations. Therefore, Plaintiff also has a real interest—beyond the general public interest—in seeking cancellation of the Registration because Lufthansa's rights in its LUFTHANSA mark and name have been asserted against Plaintiff—causing Plaintiff damage. Further, the threat of potential future litigation by Lufthansa against Plaintiff also is damaging.

Ironically, Plaintiff would not have even been aware of Lufthansa's fraud on the PTO if Lufthansa had not both made an issue of its LUFTHANSA mark and name in the UDRP

Complaint and also submitted evidence which made it very clear that representations made under

oath to the PTO during the prosecution of the Registration could not have been true.  Lufthansa

hypocritically claims that Plaintiff is making LUFTHANSA an issue as leverage when Lufthansa

itself made its ownership of the LUFTHANSA mark, trade name and <lufthansa.com> domain

name an issue before ICANN.  If Lufthansa's argument that its LUFTHANSA mark, trade name

and <lufthansa.com> domain name were irrelevant to the UDRP proceeding were true, then why

did Lufthansa choose to include them?  Now that Lufthansa's fraud has been uncovered, the

bottom line is that if Plaintiff is correct regarding its allegations of fraud, the Registration is void

*ab initio* and must be cancelled.  *See*, *generally*, *Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d

1205 (TTAB 2003).  Nothing raised in the Motion can change that conclusion.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court deny

Lufthansa's Motion in its entirety.


Dated:  June 5, 2008                          KENYON & KENYON LLP


                                   By:     s/Michelle Mancino Marsh
                                           James E. Rosini (JR 7791)
                                           Michelle Mancino Marsh (MM 1494)
                                           Michael Kelly (MK 6776)
                                           One Broadway
                                           New York, New York 10004
                                           (212) 425-7200

                                           Attorneys for Plaintiff
                                           Future Media Architects, Inc.